The next case today is Union International, UAW Local 2415 v. Bacardi Corporation, appeal number 201136. Attorney Schell, please introduce yourself for the record and proceed with your argument. May it please the court, my name is Richard J. Schell and I represent the plaintiff appellant in this appeal, the United Auto Workers. If the court permits, I would like to reserve 2 minutes of my time for rebuttal. Yes. The union seeks reversal of an arbitration award dismissing its grievance nearly 12 years after it was filed, premised on a defense that Bacardi raised for the first time more than 10 years into litigation. The award on appeal had been issued more than 5 years after the parties had filed their draft submissions, which contained no mention of Bacardi's new defense, and more than 4 years after a prior award had held the plaintiff judicial review by Puerto Rico state courts. Nearly 60 years ago, the Supreme Court warned that the opportunities for deliberate delay created by the separation of the procedural and substantive elements of a dispute are clear. In fact, the Supreme Court stressed that such delay may entirely eliminate the prospect of a speedy arbitrated settlement of the dispute to the disadvantage of the parties and contrary to the aims of national labor policy. This appeal is exactly what the Supreme Court foretold. In this vein, the award is premised on a procedural arbitrability defense raised for the first time more than 10 years into litigation and more than 5 years after the parties have submitted their draft submissions. These facts warrant reversal. First, and in accordance with what the Supreme Court says, the award is contrary to national labor policy. Second, both parties agree that the arbitrator had to issue an award in accordance with the law. Because the award is contrary to law, reversals would follow. Counsel, the procedural arbitrability issue that Bacardi raised sort of the second time around, I gather it's your position that nothing prevented them from raising that same issue when they raised their so-called substantive arbitrability argument. Is that your position? That is my position, Your Honor, and that is actually not an issue in this appeal because Bacardi himself conceded this point. In pages 31 and 57 of its brief, Bacardi did acknowledge that he could have raised his defense then, but to reasons unaware to me, Bacardi chose not to raise his defense then. And so that procedural arbitrability issue, I mean, they're claiming that in effect there was a sort of statute, a time problem under the contract with the wage claim that your client were raising. And that time issue was the procedural bar. Is that what they're arguing when they talk about procedural arbitrability? That's my understanding, Your Honor. It's a contractual time bar. Okay. And so the period of this contract was what, 2006 to 2011? Is that correct? Yes, Your Honor. And the grievance was filed on August 2007. Okay. But when you finally got to the first so-called merits hearing, that took place in what, 2013. Is that correct, June? Yes. September, I believe it's, no, June 12, 2013. Okay. And so again, whatever time issue there was under the contract, Bacardi could, and I guess you'd say they acknowledged it, they could have raised it at that time. Yes, Your Honor. And on that point too, Bacardi's challenge is a facial challenge to the grievance, meaning the content of the grievance when it was filed, so on and so forth. So there were no intervening circumstances between the first hearing and the second hearing that could have made this defense available to Bacardi during the second hearing, when it in fact had that defense available during the first hearing. Okay. And what is the, are you invoking a sort of a common law of arbitration principle of waiver? Are you relying on a specific rule that required them to raise that procedural arbitrability issue at the first merits hearing? What exactly is the source of the legal principle that you're relying upon to say they had to raise it? Your Honor, there are three sources of law. The first and simplest one is the applicable rules of arbitration. Arbitration was to be conducted by the Bureau of Conciliation and Arbitrations Regulations, which were relevant, and this is Article 13d of Bureau Regulations provide that in case one of the parties alleges that the dispute is not arbitrable, they must include said claim in their submission draft and shall have the weight of evidence regarding their claim. Article 13d further provides that a failure to comply with this provision shall mean that the arbitrability defense of the grievance shall not be considered. It is our understanding that the regulations usage of the word shall is the language of mandate. As the Supreme Court held in National Association of Home Builders versus Defenders of Wildlife, when the word shall is included in these sorts of dispositions, it indicates a command that admits of no discretion on the part of the person instructed to carry out the directive. Where does that say they have to raise them all at the same time? Where do you find in that rule a requirement that having raised a substantive arbitrability issue in 2013, at the same time they had to raise whatever issue they might have in opposition to the arbitration proceeding? Where do you find that language? Your Honor, that actually does tie in. There is no expressed language there providing that exact point, but that also ties into our judicial estoppel argument. In our judicial estoppel argument, we note that Bacardi's submission during the first hearing was for the arbitrator to decide the substantive arbitrability of the grievance. If the arbitrator were to decide that the grievance was substantively arbitrable, Bacardi further requested from the arbitrator to hold a hearing on the merits. In other words, it is the union's position that when Bacardi tendered its first submission, Bacardi was only going to raise one arbitrability defense and by asking the arbitrator to then enter into the merits of the grievance, if it found that the grievance was arbitrable, it waived any further defenses to that effect. Well, in judicial estoppel, you have to show that the argument that is now contrary to the one they're currently asserting prompted the court to make a particular decision. How did their representation that if we lose on substantive arbitrability, we should go to a merits hearing, how did that in any way influence the decision that the court made? That just sounds like a scheduling matter. All they're saying is, if we don't win on this, yeah, we should have a merits hearing. I don't see how that's anything more than a scheduling matter. Your Honor, it's not a scheduling matter. It also ties into our law of the case, doubt, and argument. In another portion of Article 13 3D of Bureau regulations, it concedes an arbitrator the discretion to elucidate the case in the merits and decide on both controversies, the arbitrability and the merits controversies, once they are submitted. In other words, the Bureau regulations provide the arbitrator with the discretion to bifurcate the proceeding into an arbitrability phase and to a merits-based phase. When the arbitrator decided to entertain McCarty's first arbitrability defense, the arbitrator did decide to bifurcate these proceedings into an arbitrability phase and into a merits-based phase. The arbitrability phase was then subject to judicial review by Puerto Rican courts, which upheld that the grievance was arbitrable and then scheduled this matter for a hearing on the merits. It is our understanding that this bifurcation of proceedings resulted in a complete resolution of the arbitrability portion of the case and then leaving pending the merits phase of the arbitrability portion of this case. Does that answer your honor's question? Yeah. Yes. Yes. Thank you. It is sort of astonishing that a proceeding that began in the first year, your first complaint was filed in, I guess, 2007. Here we are in March of 2021, and there has never been a merits hearing with respect to the wage demand. Why did it take five years to even get to the first arbitration hearing? Why did it take five years to even get to that point? Your honor, I simply don't know. I was actually still in high school when the original grievance was filed. I can definitely say that from my personal experience with the Bureau, and this is purely speculation on my part, is that sometimes it takes a bit longer for certain claims to be sent to a hearing on the merits, and sometimes it does take less longer for hearings to be scheduled for a hearing on the merits. For example, I do know that hearings on terminations and other adverse employment actions do take precedence. However, I simply cannot give an explanation in this case. I can give an explanation on what happened after 2013, but certainly not to anything before then. Okay. Well, in addition to the rule, what other principle do you rely upon to argue that Bacardi waived its right to invoke this procedural issue after the Puerto Rico courts finally sent the matter back for what you thought was going to be a merits hearing? What other principle do you invoke? Your honor, I did mention previously judicial estoppel, and I did also mention the law of the case doctrine. I believe I should move on to judicial estoppel since it's a somewhat simpler doctrine to handle. Our judicial estoppel argument, as previously stated, relies on the fact that Bacardi's prior submission contradicts with their latter proposed submission. The prior submission asked for a hearing on the merits if they did not prevail on their substantive defense. Then when the hearing on the merits finally comes around about more than five years after Bacardi submitted his first submission, Bacardi then switches forces midstream, so to say, and then argues that, no, we're not asking for a hearing on the merits now. We want the arbitrator to decide this procedural arbitrability question, which we did not raise five years beforehand, and have the arbitrator completely obviate our prior request for a hearing on the merits. I believe that that statement by Bacardi is simply contradictory to its prior statement, not to mention that the arbitrator did rely on Bacardi's prior draft submission to the The arbitrator's acceptance of Bacardi's prior submission agreement led to a five-year delay until another hearing on the merits could be scheduled. Mr. Schell, let me ask you this, and maybe it was quite tactical on Bacardi's part, but in their first submission, they specifically asked for the arbitrator to determine if it was substantively arbitrable. Now, is it fair to assume that the union at that point could have asked for a ruling on both substantive and procedural arbitrability in addition to a decision on the merits thereafter if the arbitrator found it to be both? Your Honor, I don't quite understand your time to back in 2013 or in 2018. I'm talking about when the, in 14, when both sides submitted what they wanted the arbitrator to decide. Your Honor, I understand your question, but I do believe that the bureau regulations are very clear in this regard. The union had no duty to ask the arbitrator to rule on the procedural nature of the grievance, because the party alleging, the party raising an arbitrability defense has to be the party who decides, is duty-bound to raise this defense unless waiver occur. More importantly, the union back in 2013 did ask for a determination on the merits. The arbitrator did make note of this in the first award. However, we do understand that the arbitrator did have discretion to bifurcate proceedings then and to rule on the arbitrability question first and then reserving a decision on the merits for after ruling on this arbitrability question. Thank you, Mr. Schell. We're a little over time, but you have reserved some time, so we'll hear from Ms. Rodriguez. Thank you, Your Honor. Mr. Schell, please mute your device. Attorney Rodriguez, please unmute and introduce yourself on the record for us. May it please the court, Nicole Rodriguez on behalf of Bacardi Corporation, the appellee in this case. Your Honor, the arbitrator in this case acted correctly and within his authority when accepting and considering Bacardi's submission draft regarding procedural arbitrability while this case was still in the submission phase. More specifically, the arbitrator's actions in this case were entirely consistent with the language of the regulations that were incorporated into the collective bargaining agreement with respect to the proper time to raise issues of arbitrability. Now, Article 13D of the regulations, which was referenced by opposing counsel, and this is the controlling section in terms of this issue as to when the proper time to raise issues is, provides that the parties had to raise the issues of arbitrability in the submission draft prior to the arbitration hearing and that failure to do so would result in such issues not being considered. Now, that's exactly what Bacardi did in this case. The procedural arbitrability defense was raised in a submission draft submitted to the arbitrator prior to the commencement of the hearing on the merits. This action by Bacardi... Counsel, there's really something to miss here. I mean, first of all, opposing counsel says you acknowledge, and if this is not the case, you should say so, that Bacardi acknowledges that at the same time that the substantive arbitrability issue was raised, I guess, back in 2007, and you could have... Let me correct that. When you finally get to a hearing in 2013 and the substantive arbitrability issue is before the arbitrator, you could also have raised the procedural arbitrability issue. Is that correct? Do you acknowledge that? It's correct that the regulations do not limit or prohibit us from raising both defenses. They also didn't prohibit us from raising it thereafter subsequently in the case so long as it was done during the submission phase of the case prior to the hearing on the merits. How can it be a rational or fair process that you raise the substantive arbitrability issue, you lose on that, you then appeal it through the Puerto Rico courts for another four or five years, it finally comes back for what is supposed to be a merits hearing, and then for the first time, you raise a procedural arbitrability issue, which you could have raised five or six years ago, and thereby trigger another round of appeals, and here we are in 2021, and this complaint about wages that was filed in 2007 remains unresolved. That just seems to smack of nothing but gamesmanship on the part of your client. A determined effort to ever avoid having to face the merits of the wage claim that was filed back in 2007, how can that possibly be fair or proper in any rational system of arbitration? Certainly, Your Honor, the submission phase in this case, it cannot be argued that it was nothing but lengthy, it was very lengthy. Now, the thing is that the duration or the amount of time that the case took between the different phases is not attributable to Bacardi. As you said before, it took six years from the time that the application for arbitration and the first hearing took place. The appeals process took roughly another two years between the parties. There was a change of arbitrator, Hurricane Maria passed, the union failed to appear at another one of the hearings, and that also required postponement, and that was not attributable to Bacardi. So certainly, the delay in time was not attributable to my client, and beyond that, the regulations did allow Bacardi to raise this issue, which goes to the heart of the jurisdiction of the arbitrator to determine issues based on the will of the parties as established in the collective bargaining agreement. And so, Bacardi was in no way renouncing the ability to subsequently raise the issue, and it did so within the bounds of what regulations allowed, which is that it was done within the submission phase. Okay, so, but what was taking place in 2013, that was a submission phase, right? You were trying to define what the issues were before the arbitrator. That was a submission phase, right? That was certainly during the submission phase, yes, Your Honor. Okay, so why shouldn't your client, during that submission phase, given the rule, raised an arbitrability issue that was available to it in 2013? What allows your client to sort of disaggregate, if you will, these arbitrability issues? Your Honor, I'm sorry. Oh, please, go ahead. Go ahead. No, I'm sorry. Unfortunately, the reasons why that wasn't raised in the initial submission draft are not in the record, but what I will say is that the regulations did permit and did not limit. The only limitation was that it would be done during the submission phase. So, nothing prevented Bacardi from raising that issue, so long as it was done during the submission phase of the case, prior to the hearing on the merit, and affording, in that sense, the union the opportunity to address the issue and present evidence that it did comply with the timeliness and specificity requirements. It didn't do so, but it did have the opportunity. So, in that sense, it does seem fair. So, is it your position that the submission phase lasts indefinitely until such time as there is an actual determination that it's appropriate to have a hearing on the merits? No, Your Honor. Our position would be that the submission phase ends as soon as the arbitration hearing on the merits commences. Well, then, doesn't your opponent have a point? You represented, back in 2013, if you lose on substantive arbitrability, there should be a merits hearing. That was your representation. After the appeals are exhausted in Puerto Rico, and it's now ready for a merits hearing, you say, no, no, we're not ready for a merits hearing. There is another submission issue that we want to address. I mean, isn't Judge Thompson correct? You're really arguing that the submission phase just goes on and on and on until the merits hearing actually takes place. Again, that seems like an irrational argument. Well, no, Your Honor. With all due respect, by submitting the prior proposed submission, Bacardi was in no way renouncing the ability to then raise it subsequently at a later stage in the case, so long as, again, it was done prior to the hearing on the merits. So, no, it was not. Well, I'm sorry, Your Honor. But suppose you had multiple arbitrability issues. Does it mean you can raise one, litigate it through the Supreme Court, raise another one, litigate that one, raise a third one? I mean, this could go on and on indefinitely unless there is some reasonable amount of time set aside to raise these kinds of challenges. Well, yes, Your Honor. I mean, it's certainly not ideal, but based on the will of the parties, what they bargained for, what they agreed to, was that the regulations of the Bureau of Judicial Review could go on indefinitely. Well, it may be irrational, but nonetheless, it is what the parties bargained for and agreed to, and that's what the regulations article says. Well, just to pin down your argument, so you're saying that this could go on indefinitely until there was an actual hearing on the merits? Well, not necessarily indefinitely, but certainly until those issues of arbitrability. I'm sorry? What's the limitation? Well, the limitation is as established by the regulations, which is that they have to be submitted prior to the hearing on the merits and it has to be done in writing in a submission draft. That's the only limitation that the regulations allow for, and that's what the parties agreed to. So, indefinitely? Well, until the hearing on the merits commences or those issues of arbitrability are decided. And it imposes no burden on you to raise your defenses in a timely fashion? Well, that's one interpretation of the regulation, but that's what the regulation says. That's what the parties agreed to, and the will of the parties should prevail during the entire arbitration process. That's the only limitation that the parties had here in terms of raising issues of arbitrability. Counsel, do you acknowledge that had the arbitrator ruled that you were too late, that you had waived, you'd had plenty of opportunity before, that that would have been within the arbitrator's power? It was certainly within the arbitrator's authority and discretion to determine based on the regulations and interpret whether or not to consider Bacardi's submission draft at that point, yes, your honor. It was within the arbitrator's discretion and authority to determine whether there was a waiver or not, and obviously by accepting and considering and then later adopting Bacardi's submission of draft, the arbitrator interpreted that Bacardi had not in fact waived the ability to raise the procedural arbitrability issue at that stage. And what's our standard of review on that particular issue? The standard of review is whether the arbitration decision was unfounded in reason or in fact, based on reasoning so probably faulty that no judge or group of judges could ever conceivably make such a ruling, or mistakenly based on a factual assumption of a crucial fact that is about four or five minutes left. I think four minutes, if you have anything you'd like to add. Sure, your honor. Thank you. We just want to sum up by saying that it was within the arbitrator's purview to consider Bacardi's procedural arbitrability defense. And given that the union failed to satisfy the timeliness and specificity requirements established in the second step of the grievance process, as outlined in the collective bargaining agreement, and failed to present any evidence that it did comply with the second step of the grievance process, the arbitrator acted correctly when dismissing the agreements for lack of procedural arbitrability. Other questions from the judges? Quickly, all those deficiencies that you cite about the way in which the union had failed to specify its claim, isn't that exactly the kind of stuff that would be addressed on the merits hearing? I mean, that's when they would have to try to specify the wage claims that specific employees have. Isn't that what the merits hearing would be all about? Well, no, your honor. The timeliness issue was that the CBA stated specifically that the union had seven days from date of the event alleged in the grievance to file a written grievance as to it, specifying the details of the grievance and of the event. And they didn't either. Here, the alleged mispayments were occurring since January 1st, 2006, when the CBA entered into effect, and they didn't present the grievance letter until August 30th, 2007. So roughly a year and strict compliance this term. They also made a blanketed allegation as to mispayments without specifying the dates of the mispayments or checks, the names of the employees affected. But I still don't understand why that's a question of arbitrability rather than a merits question. Because they failed to comply with the process. The second step of the grievance process established that they had to comply with that timeliness requirement, that specific seven business day period. Otherwise, the grievance would be deemed withdrawn or resolved. So basically, by failing to comply with that step, they waived the ability to raise it and bring it to arbitration. And interestingly enough, obviously their position is that the notice that provided was sufficient. So once again, it's a dispute as to the sufficiency, but why is it not a merits issue rather than an arbitrability issue? It's not that they didn't give some notice. No, Your Honor, the issue is that the notice, there were some very strict self-imposed deadlines that were of a jurisdictional nature in the grievance process. And in failing to present the grievance within that time period, they were essentially waiving the ability to bring it. To the extent that they may have waived some, some had to have been timely, some had to have occurred within seven days of the notice itself. So perhaps the ones before that were not timely, but why weren't at least some timely? Well, they failed to comply with the second prong of that second step of the grievance process. That is, they failed to specify any of the specifics of the grievance, namely, and as the arbitrator stated in his award, the names of the employees affected, what their rate of pay was, when the alleged mispayments occurred, et cetera, et cetera. So they failed to comply with the second step in two ways. And Your Honor, to address your question, they failed to actually address the issue and they regarding the fact that the second step of the grievance process, whether they complied with it or not, they failed to present any evidence or even address the issue as to whether they did comply with a second step during, in their arbitration brief. They failed to address it at all. Follow up from the court? No, thank you. Thank you. Thank you, Ms. Rodriguez. We will hear from Mr. Schell if you will mute your video and audio. For the purposes of the record, this is Richard J. Schell again. May I proceed, Your Honor? Yes. Thank you. I'd just like to address a couple of points. I'll be brief. Sister counsel's prior argument was that Bacardi was not responsible for any delay. We respectfully disagree with sister counsel's assertion. We understand that the raising of arbitration defenses one after another is itself a dilatory practice. In fact, the Seventh Circuit has termed similar practices in other, in similar proceedings as nothing more than a sandbagging which was intolerable to the court. Further, sister counsel also argues that the arbitrator had discretion and authority to consider Bacardi's latter submission. Sister counsel cites El-Khoury and El-Khoury in her brief to support that proposition. There is another prompt to that discretion. There is a fundamental fairness element to that discretion. The union contends that given the timeline and practice incurred by Bacardi, that fundamental fairness problem can be complied with. Lastly, as to whether the union did provide its position regarding the procedural arbitral deletion offense, we do cite portions of the arbitration hearing transcript in our brief. It is included in the appendix where we facially object to Bacardi raising the procedural arbitral deletion offense. Further, the arbitrator had before all relevant papers relating to whether the union complied with the relevant steps of the procedures prior to evidence necessary to decide that issue. The union simply did not have to address anything further than what was already on the record in which the arbitrator had available to him. Unless the court has any other questions, we rest on our briefs and we would like to thank the court for its time in considering our case and for ensuring continuity of operations. I just have one question on the last point because I'm trying to understand. Are you saying that the arbitrator had paperwork with regard to the procedural issues raised by Bacardi and therefore you don't feel that you needed to submit any more specific objections to their argument that you didn't comply with the procedural rules? That's correct, Your Honor. The arbitrator had before him all relevant paperwork. The arbitrator actually knew all relevant case law, too. For example... But I'm saying you're saying that you didn't feel the need to say to the arbitrator, no, this is why we complied with the procedures that were set forth in the contract. Yes, Your Honor. It is our understanding that the union's grievance as originally submitted spoke by itself and belied the assertions made by opposing counsel back in the 2018 arbitration hearing. Counsel, did you raise before the arbitrator, did you argue that Bacardi had waived the right to even raise the procedural arbitrability ruling? I don't think there was anything that I saw in the arbitrator's decision that dealt with the waiver issue. The arbitrator just seemed to go directly to an analysis of the procedural arbitrability ruling itself, but maybe I missed it. Did you raise the waiver argument? Yes, Your Honor, we did. It's in pages 279 to 282 of our appendix. Okay. All right. Okay. Thank you. Thank you. Thank you both. Thank you. That concludes argument in this case. Attorney Schell and Attorney Rodriguez, you should disconnect from the hearing at this time.